Citation Nr: 1617286 
Decision Date: 04/29/16 Archive Date: 05/04/16

DOCKET NO. 09-49 239 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUES

1. Entitlement to a higher initial disability rating (or evaluation) in excess of 10 percent for tendonitis of the right foot.

2. Entitlement to a higher initial disability rating in excess of 10 percent for tendonitis of the left foot.

3. Entitlement to a total disability rating based in individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

The Veteran (Appellant) and R.H.


ATTORNEY FOR THE BOARD

J. Ragheb, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant, served on active duty from March 1961 to August 1991. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from a November 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina. The Board has reviewed both the Veterans Benefits Management System (VBMS) and "Virtual VA" files so as to ensure a total review of the evidence.

The Veteran testified at a May 2015 Board videoconference hearing before the undersigned Veterans Law Judge (VLJ). The hearing transcript has been associated with the electronic claims file on VBMS. 

In September 2015, the Board remanded the issues of entitlement to higher ratings for the right and left foot tendonitis disabilities to the Agency of Original Jurisdiction (AOJ) in order to provide the Veteran with an updated VA examination. As the above-referenced development has been completed, the Board finds that the AOJ substantially complied with the September 2015 Board Remand directives, and that the matter has been properly returned to the Board for appellate consideration. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (Fed. Cir. 2002).

The issue of entitlement to a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.


FINDINGS OF FACT

1. For the entire initial rating period from July 14, 2008, the right and left foot tendonitis disabilities have manifested in bilateral foot pain at the ball of the feet, along the plantar surfaces of the feet, and at the heels.

2. For the entire initial rating period from July 14, 2008, the right and left foot tendonitis disabilities have not manifested in marked limitation of motion of the ankles.


CONCLUSIONS OF LAW

1. For the entire initial rating period from July 14, 2008, the criteria for an initial disability rating in excess of 10 percent for right foot tendonitis have not been met or more nearly approximated. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.20, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5024, 5271 (2015).

2. For the entire initial rating period from July 14, 2008, the criteria for an initial disability rating in excess of 10 percent for left foot tendonitis have not been met or more nearly approximated. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.20, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5024, 5271 (2015).







REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duties to notify and assist claimants in substantiating their claims for VA benefits. 
38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. 
§§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim and of the relative duties of VA and the claimant for procuring that evidence. 38 U.S.C.A. § 5103(a); 38 C.F.R. 
§ 3.159(b). Such notice should also address VA's practices in assigning disability evaluations and effective dates for those evaluations. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Notice should be provided to a claimant before the initial unfavorable agency of original jurisdiction (AOJ) decision on a claim. 38 C.F.R. § 3.159(b)(1); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004); see also Mayfield v. Nicholson, 19 Vet. App. 103, 110 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006). 

In this case, because the appeal for a higher initial rating for higher initial ratings for tendonitis of the feet arises from the Veteran's disagreement with the initial rating following the grant of service connection, no additional notice is required. The United States Court of Appeals for the Federal Circuit (Federal Circuit) and the United States Court of Appeals for Veterans Claims (Court) have held that, once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007); 38 C.F.R. § 3.159(b)(3)(i) (no duty to provide VCAA notice upon receipt of a notice of disagreement); VAOPGCPREC 8-2003 (in which the VA General Counsel interpreted that separate notification is not required for "downstream" issues following a service connection grant, such as initial rating and effective date questions).

As to the duty to assist, the Board finds that VA has satisfied its duties to assist the Veteran. VA has made reasonable efforts to obtain relevant records and evidence. Specifically, the information and evidence that has been associated with the claims file includes the Veteran's service treatment records, post-service VA and private treatment records, relevant VA examination reports, the May 2015 Board hearing transcript, and the Veteran's written statements. 

VA most recently examined the right and left foot tendonitis in October 2015. The Board finds that the above-referenced examination report is adequate for VA rating purposes because it was written after an interview with the Veteran, examination, and contains findings regarding the severity of the Veteran's right and left foot tendonitis disabilities supported by clinical data. See generally Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate).

Based on the foregoing, the Board finds that all relevant facts have been properly and sufficiently developed in this appeal, and no further development is required to comply with the duty to assist in developing the facts pertinent to the appeal. In view of the foregoing, the Board will proceed with appellate review.

Disability Rating Legal Authority

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities. The percentage ratings are based on the average impairment of earning capacity and individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. If two ratings are potentially applicable, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding a degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3. 

In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances. 38 C.F.R. § 4.21 (2015). In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of a veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). 

When a claimant is awarded service connection and assigned an initial disability rating, separate disability ratings may be assigned for separate periods of time in accordance with the facts found. Such separate disability ratings are known as staged ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (1999) (noting that staged ratings are assigned at the time an initial disability rating is assigned). Here, the Board will evaluate the issue for a higher rating of the original award. In such cases, the severity of the disability at issue is to be considered during the entire period from the initial assignment of the disability rating to the present time. Id. The Board has considered whether a staged rating is warranted with respect to the issue of entitlement to higher initial ratings for the right and left foot tendonitis disabilities, and finds that the severity of the right and left foot tendonitis disabilities on appeal has not changed during the course of the appeal so as to warrant staged rating, as explained below. 

Pyramiding, that is the rating of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating a veteran's service-connected disability. 38 C.F.R. § 4.14 (2015). However, it is possible for a veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes; the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.40, 4.45; see also DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995). Painful, unstable, or malaligned joints, due to healed injury, are entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. The factors involved in evaluating, and rating, disabilities of the joints include weakness; fatigability; incoordination; restricted or excess movement of the joint, or pain on movement. 38 C.F.R. § 4.45.

In rendering a decision on appeal the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

Generally, lay evidence is competent with regard to a disease with "unique and readily identifiable features" that is "capable of lay observation." See Barr, 21 Vet. App. at 308-09 (concerning varicose veins); see also Jandreau v. Nicholson, 
492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (a dislocated shoulder); Charles v. Principi, 16 Vet. App. 370, 374 (2002) (tinnitus); Falzone v. Brown, 8 Vet. App. 398, 405 (1995) (flatfoot); Layno, 6 Vet. App. at 470 (a veteran is competent to report on that of which he or she has personal knowledge). Notwithstanding the above, however, a veteran is not competent to provide evidence as to more complex medical questions and, specifically, is not competent to provide an opinion as to etiology in such cases. See 38 C.F.R. § 3.159(a)(2); Woehlaert v. Nicholson, 
21 Vet. App. 456, 462 (2007) (concerning rheumatic fever).

Lay evidence can be competent and sufficient evidence of a diagnosis if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau, 492 F.3d 1372 at 1376-77. Additionally, a lay person may speak to etiology in some limited circumstances in which nexus is obvious merely through observation, such as sustaining a fall leading to a broken leg. Id. At 1376-77.

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claims. 
See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000); Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Initial Rating Analysis for Right and left Foot Tendonitis

For the entire initial rating period from July 14, 2008, the Veteran is in receipt of a 10 percent rating for each of the service-connected right and left foot tendonitis disabilities under Diagnostic Code (DC) 5099-5024 (which is in turn rated under DC 5003). 38 C.F.R. § 4.71a. When an unlisted disease, injury, or residual condition is encountered, requiring rating by analogy, the diagnostic code number will be "built-up" by using the first two digits of that part of the rating schedule which most closely identifies the part, or system, of the body involved and adding "99" for the unlisted condition). Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned. The additional code is shown after the hyphen. Regulations provide that when a disability not specifically provided for in the rating schedule is encountered, it will be rated under a closely-related disease or injury, in which both the functions affected and the anatomical localization and symptomatology are closely analogous. 38 C.F.R. § 4.20. The 10 percent ratings for each of the right and left foot tendonitis were assigned by analogy to painful or limited motion (to a noncompensable degree) of a major joint or group of minor joints under 38 C.F.R. § 4.71a, DC 5003. See November 2009 rating decision.

DC 5024 directs that diseases under this diagnostic code will be rated as arthritis based on limitation of motion of the affected parts (DC 5024-5003). DC 5003 provides that, when the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic code for that joint, a rating of 10 percent is for application for each such major joint group or minor joint group affected by (noncompensable) limitation of motion. In the absence of limitation of motion, a 20 percent rating is provided where there is X-ray evidence of involvement of two or more major joints, or two of more minor joint groups with occasional incapacitating exacerbations. 38 C.F.R. § 4.71a, DC 5003. 

At the outset, the Board notes that the Veteran is service connected for hallux rigidus with arthritis of the right and left great toes. A May 2013 final Board decision denied higher ratings than 10 percent for the right and left great toe hallux rigidus with arthritis. Accordingly, the issues of entitlement to higher ratings for hallux rigidus with arthritis of the right and left great toes are separate and distinct disabilities than ratings for the tendonitis of the feet, so are not before the Board on appeal. The reported symptoms of pain in the right and left toe areas, as well as any symptoms attributable by the medical evidence to that disability, may not also be considered when rating the tendonitis disabilities, as to do so would constitute pyramiding in violation of 38 C.F.R. § 4.14. See also Esteban, 6 Vet. App. at 261-62 (stating that the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition). The Board will focus its analysis in this decision on the issues of entitlement to higher initial ratings for right and left foot tendonitis. 

The Veteran contends that higher ratings for right and left foot tendonitis are warranted because of daily debilitating foot pain. See December 2009 VA Form 21-4138. The Veteran also reported that he cannot walk due to foot pain. See May 2015 Board hearing transcript. 

After a review of all the lay and medical evidence of record, the Board finds that the weight of the evidence is against assignment of higher initial ratings than 10 percent for each of the right and left tendonitis disabilities. 38 C.F.R. § 4.71a.

The Veteran underwent a VA examination of the feet in August 2009 where he reported constant pain in the balls of the feet and at the bottom of the feet around the heel area. The August 2009 VA examiner noted that x-rays from August 2007 showed diffuse symmetrical bilateral foot osteoarthritis most prominent at the first metatarsophalangeal joint, as well as moderate posterior and plantar calcaneal spurring bilaterally. Upon examination in August 2009, the VA examiner noted that the Veteran walked with a slight limp using no assistive devices, and indicated that there was no edema of the feet. Pulses were 2+, and feet were warm and pink with brisk capillary refill. Ankle reflexes were 2+ with normal ankle range of motion (20 degrees of dorsiflexion and 45 degrees of plantar flexion). Sensation in the feet was normal with pain to palpation on the entire plantar surface of the feet. The Veteran had normal strength in the feet and arches appeared to be normal with uneven shoe wear noted on the medial aspects of the Veteran's shoes. The examiner diagnosed osteoarthritis of both feet with moderate posterior and plantar calcaneal spurring on x-ray. A November 2009 addendum VA examination report shows that the Veteran diagnosed tendonitis of both feet. 

The Veteran underwent a VA examination of the feet in February 2011 where he reported intermittent bilateral foot pain which flares with standing and walking. The Veteran described functional limitation of inability to walk more than 10 to 15 feet, inability to run, and inability to stand for more than five minutes. Upon examination in February 2011, the VA examiner noted Achilles tracks midline bilaterally with no abnormal shoe breakdown or callosities. The February 2011 VA examination noted that the arches were intact bilaterally, sensation to light touch was intact, and there was pain with manipulation of the Achilles tendons and heels. There was no hammer toe or claw foot bilaterally. The February 2011 VA examiner diagnosed bilateral Achilles tendonitis and osteoarthritis of both feet. The February 2011 examiner noted severe arthritis involving the metatarsophalangeal joints of both feet without associated varus or valgus deformity, with locations of arthropathy and bilateral inferior calcaneal spurs, larger on the left side. 

The Veteran underwent another VA examination of the feet in October 2015 where he reported that he continued to have worsening bilateral foot pain, and that he tried steroid injections and shoe inserts with some relief. The Veteran reported that the pain in both feet is at the first metatarsophalangeal joints, along the arches, and at the plantar insertion at the heel and with dorsiflexion of the feet. Upon examination in October 2015, the VA examiner noted that the Veteran did not have Morton's neuroma, metatarsalgia, hammer toes, or hallux valgus, but had hallux rigidus. The October 2015 examiner assessed moderately severe foot injury bilaterally. In a February 2016 addendum VA examination report, the VA examiner clarified that he did not find evidence of current symptoms associated with bilateral foot tendonitis, and that the Veteran has severe arthritis with hallux rigidus which are the most likely cause of the Veteran's considerable bilateral foot symptoms. 

The Veteran underwent VA examinations of the feet in August 2007 and December 2013 that showed no findings pertaining to the service-connected right and left foot tendonitis. 

The Board finds that the preponderance of the evidence is against the assignment of a disability rating in excess of 10 percent for each of the service-connected right and left foot tendonitis disabilities at any point during the initial rating period on appeal. The Board finds that the Veteran's complaints of bilateral foot pain at the ball of the feet, along the plantar surfaces of the feet, and at the heels are contemplated by the 10 percent disability rating assigned under DC 5024 by analogy to painful or limited motion (to a noncompensable degree) of a major joint or group of minor joints. 38 C.F.R. § 4.71a, DC 5024-5003. Moreover, the record does not show marked limitation of motion of the ankles so as to warrant a higher rating than 10 percent for either foot under DC 5271. 

The Board has also considered the application of DC 5284 based on the October 2015 VA examiner's findings of a disability picture of moderately severe foot injury bilaterally; however, as explained above, the February 2016 addendum VA examination report shows that the examiner clarified that he did not find evidence of current symptoms associated with bilateral foot tendonitis, and that the Veteran has severe arthritis with hallux rigidus which are the most likely cause of the Veteran's considerable bilateral foot symptoms. See Mittleider v. West, 11 Vet. App. 181, 182 (1998) (per curiam), citing Mitchem v. Brown, 9 Vet. App. 136, 140 (1996) (stating the Board is precluded from differentiating between symptomatology attributed to a non-service-connected disability and a service-connected disability in the absence of medical evidence that does so, although the Board may not ignore such distinctions where they appear in the medical record). In this case, the Board cannot ignore the February 2016 VA examiner's specific findings that the Veteran's considerable foot symptoms are likely caused by the service-connected hallux rigidus with arthritis of both great toes for which the Veteran is in receipt of a 10 percent rating for each foot. The assignment of a higher rating than 10 percent under DC 5284 based on these same symptoms constitutes impermissible pyramiding. See 38 C.F.R. § 4.14; Esteban, 6 Vet. App. at 261-62.

Finally, the Veteran described functional impairment with respect to prolonged walking, prolonged standing, and running; however, all the symptomatology and functional impairment described above result from bilateral foot pain, which is contemplated in the assignment of the 10 percent rating for each of the right and left foot tendonitis under DCs 5024 (rated by analogy to DC 5003 based on pain that limits motion of a joint to a noncompensable degree). See November 2009 rating decision; 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a; DeLuca, 8 Vet. App. at 206-07.

Based on the foregoing, the weight of the evidence demonstrates that, for the entire initial rating period from July 14, 2008, the right and left foot tendonitis disabilities have manifested in bilateral foot pain at the ball of the feet, along the plantar surfaces of the feet, and at the heels, which is analogous to painful or limited motion (to a noncompensable degree) of a major joint or group of minor joints of each foot. For these reasons, the preponderance of the evidence weighs against a finding that the right and left foot tendonitis disabilities more closely approximate higher ratings than 10 percent for the rating period from July 14, 2008. See 38 C.F.R. §§ 4.3, 4.7, 4.40, 4.45, 4.59; DeLuca at 206-07. Because the preponderance of the evidence is against the issue, the benefit-of-the-doubt doctrine is not for application. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 4.3, 4.7.

Extraschedular Consideration

The Board has considered whether referral for an extraschedular evaluation would have been warranted for the right and left foot tendonitis disabilities for any part of the initial rating period on appeal. An extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1); see Fanning v. Brown, 
4 Vet. App. 225, 229 (1993).

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the Board must determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the VA Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether the veteran's disability picture requires the assignment of an extraschedular rating. 

Turning to the first step of the extraschedular analysis, the Board finds that all the symptomatology and impairment caused by the Veteran's right and left foot tendonitis disabilities is specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. The schedular rating criteria, including DC 5024-5003, specifically provides for a disability picture analogous to painful or limited motion of a major joint or group of minor joints, including as due to pain and other orthopedic DeLuca and 38 C.F.R. §§ 4.40, 4.45, 4.59, which are incorporated into the schedular rating criteria. See Schafrath, 1 Vet. App. at 592 (read together with schedular rating criteria, 38 C.F.R. §§ 4.40 and 4.45 recognize functional loss due to pain); Deluca at 206-07 (functional limitations are applied to the schedular rating criteria to ascertain whether a higher schedular rating can be assigned based on limitation of motion due to pain and during flare-ups, and should be expressed in schedular rating terms of degree of range-of-motion loss); Burton v. Shinseki, 25 Vet. App. 1, 4 (2011) (the majority of 38 C.F.R. § 4.59, which is a schedular consideration rather than an extraschedular consideration, provides guidance for noting, evaluating, and rating joint pain); Sowers v. McDonald, No. 14-0217 (Vet. App. Feb. 12, 2016) (38 C.F.R. § 4.59 is limited by the diagnostic code applicable to the claimant's disability, and is read in conjunction with, and subject to, the relevant diagnostic code); Mitchell v. Shinseki, 25 Vet. App. 32, 33-36 (2011) (pain alone does not constitute functional impairment under VA regulations, and the rating schedule contains several provisions, such as 38 C.F.R. §§ 4.40, 4.45, 4.59, that address functional loss in the musculoskeletal system as a result of pain and other orthopedic factors when applied to schedular rating criteria); see also Mitchell, 25 Vet. App. at 45 (Footnote 2) and Vogan v. Shinseki, 24 Vet. App. 159, 161 (2010) (when a condition is not listed in the VA disability schedule, VA may undertake rating by analogy where the disability in question is analogous in terms of the functions affected, the anatomical localization, and the symptomatologies of the ailments). 

In this case, for the entire rating period on appeal, considering the lay and medical evidence, the Veteran's right and left foot tendonitis disabilities have manifested in bilateral foot pain at the ball of the feet, along the plantar surfaces of the feet, and at the heels, which is analogous to painful or limited motion of a major joint or group of minor joints of each foot. The Veteran has indicated that the functional limitation with respect to prolonged walking, prolonged standing, and running due to bilateral foot pain, which is contemplated as one of the orthopedic factors. See id. Such symptoms and impairment are part of or similar to symptoms listed under the schedular rating criteria. See 38 C.F.R. § 4.20 (schedular rating criteria provides for rating by analogy based on similar functions, anatomical location, and symptomatology); Mauerhan v. Principi, 16 Vet. App. 436 (2002) (the schedular rating criteria also include analogous symptoms that are "like or similar to" listed schedular rating criteria). 

As to functional impairment with respect to prolonged standing, interference with standing is considered as part of the schedular rating criteria under 38 C.F.R. § 4.45, which contemplates instability of station and interference with standing and weight-bearing. To the extent that prolonged standing causes incidental foot pain, such pain is considered as part of the schedular rating criteria, to include as due to orthopedic DeLuca and 38 C.F.R. §§ 4.40, 4.45, 4.59 factors such as weakness, incoordination, and fatigability, which are incorporated into the schedular rating criteria as applied to the particular diagnostic code. See Schafrath, 1 Vet. App. 589 (1991); Burton, 25 Vet. App. at 4; Sowers, No. 14-0217; Mitchell, 25 Vet. App. at 33-36.

As to functional impairment with respect to prolonged walking or running, interference with walking or running is considered as part of the schedular rating criteria under 38 C.F.R. § 4.45, which contemplates disturbance of locomotion, instability of station, and interference with weight-bearing because prolonged walking or running necessarily involves weight bearing. To the extent that prolonged walking, running, or weight-bearing causes incidental foot pain, such pain is considered as part of the schedular rating criteria, to include as due to 

orthopedic DeLuca and 38 C.F.R. §§ 4.40, 4.45, 4.59 factors such as weakness or weakened movement, incoordination, and fatigability, which are incorporated into the schedular rating criteria as applied to the particular diagnostic code. See id.

The Board has also considered whether alternate ratings are under DCs 5271 and 5284. See 38 C.F.R. § 4.71a. For these reasons, the Board finds that the schedular rating criteria are adequate to rate service-connected right and left foot tendonitis disabilities, and referral for consideration of an extraschedular evaluation is not warranted.

According to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b)] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. The Veteran is service connected for sleep apnea, actinic keratosis, diabetes mellitus type 2, hallux rigidus of the left and right great toes with arthritis, tinnitus, right and left foot tendonitis, bilateral hearing loss, and degenerative arthritis of the left index figure with residual scar.

In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. There is neither allegation nor indication that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. In the absence of exceptional factors associated with 

the service-connected right and left foot tendonitis disabilities, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 
38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).


ORDER

An initial disability rating in excess of 10 percent for the service-connected right foot tendonitis, for the entire initial rating period from July 14, 2008, is denied. 

An initial disability rating in excess of 10 percent for the service-connected left foot tendonitis, for the entire initial rating period from July 14, 2008, is denied. 


REMAND

TDIU

Entitlement to a TDIU is potentially an element of rating issues. See Rice v. Shinseki, 22 Vet. App. 447 (2009). A TDIU requires the presence of impairment so severe that it is impossible for the average person to follow a substantially gainful occupation. Consideration may be given to the veteran's level of education, special training, and previous work experience in arriving at a conclusion, but not to age or to the impairment caused by non-service-connected disabilities. 38 U.S.C.A. 
§ 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.19 (2015). In reaching such a determination, the central inquiry is "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993).

The record reflects that a TDIU was previously denied in a May 2013 Board decision. In March 2016, the Veteran's authorized representative asserted that the Veteran has been unable to work due to feet symptoms, to include heavy limping, as well as use of a walker and a wheelchair. See March 2016 informal hearing presentation. The October 2015 VA examiner noted that the bilateral foot disabilities impact the Veteran's ability to work due to pain with walking more than short distances. 

Taking Rice into consideration, the Board is construing this evidence, specifically the March 2016 informal hearing presentation hearing testimony and the October 2015 VA examination report, to raise a new claim for a TDIU; however, further development is necessary prior to analyzing this TDIU claim on the merits. The Veteran has not been provided with the appropriate VCAA notice in conjunction with the raised claim for a TDIU. Moreover, a VA opinion would help determine whether the Veteran is unable to obtain or pursue substantially gainful employment due solely to the service-connected disabilities. Friscia v. Brown, 
7 Vet. App. 294 (1994). Any records or evidence identified by the Veteran as relevant to a claim for TDIU should be obtained; therefore, on remand, after providing appropriate notice to the Veteran, such records should be requested and an opinion should be afforded.

Accordingly, the issue of entitlement to a TDIU is REMANDED for the following actions:

1. Provide the Veteran with the appropriate VCAA notice relating to a claim for a TDIU, which outlines the types of evidence the Veteran needs to provide in order to establish a TDIU.

2. Thereafter, schedule a VA examination to be conducted by a vocational or similar specialist, if possible, to help ascertain the effect of the service-connected disabilities on employability. The relevant documents in the claims folder should be made available for review in connection with this examination. 

The examiner should provide an opinion as to the Veteran's occupational impairments and limitations resulting from all the service-connected disabilities. 

The service-connected disabilities are sleep apnea, actinic keratosis, diabetes mellitus type 2, hallux rigidus of the left and right great toes with arthritis, tinnitus, right and left foot tendonitis, bilateral hearing loss, and degenerative arthritis of the left index figure with residual scar.
 
In rendering the opinion, the examiner should consider the Veteran's education, special training, and previous work experience, but should not consider age or the effect of any non-service-connected disabilities. A rationale should be given for all opinions and conclusions rendered. 

3. Thereafter, the AOJ should adjudicate the issue of TDIU. If the benefit sought on appeal is not granted, the Veteran and representative should be provided with a statement of the case (SOC).

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). The Veteran is advised to appear and participate in any scheduled VA examination, as failure to do so may result in denial of the claim. See 38 C.F.R. § 3.655 (2015). 

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs